## STATE OF CONNECTICUT *v.* RICHARD STEVENSON
### (14656)

Dupont, C. J., and Landau and Daly, Js.

Argued September 27—officially released December 3, 1996

*Glenn W. Falk*, special public defender, with whom, on the brief, was *Donald Dakers*, special public defender, for the appellant (defendant).

*Robert J. Scheinblum*, deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *David P. Gold*, supervisory assistant state's attorney, for the appellee (state).

DUPONT, C. J. The defendant appeals from judgments of conviction rendered after a jury trial. The convictions stemmed from charges arising out of two cases involving different incidents and different victims, which had been consolidated for trial. The defendant was charged in the first case with attempted sexual assault in the first degree, kidnapping in the second degree and threatening, and in the second case with sexual assault in the first degree and kidnapping in the second degree. The jury found the defendant guilty of one count of attempted sexual assault in the first degree in violation of General Statutes §§ 53a-70 (a) (1) and 53a-49 (a),[1] and guilty of one count of threatening in violation of General Statutes § 53a-62[2] in the first case.

[1] General Statutes § 53a-70 provides in pertinent part: "Sexual assault in the first degree: Class B felony: One year not suspendable. (a) A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person . . . ."

General Statutes § 53a-49 provides in pertinent part: "Criminal attempt: Sufficiency of conduct; renunciation as defense. (a) A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime. . . ."

[2] General Statutes § 53a-62 provides in pertinent part: "Threatening: Class A misdemeanor. (a) A person is guilty of threatening when: (1) By physical threat, he intentionally places or attempts to place another person in fear of imminent serious physical injury, or (2) he threatens to commit any crime of violence with the intent to terrorize another, to cause evacuation of a building, place of assembly, or facility of public transportation, or otherwise to cause serious public inconvenience, or (3) he threatens to commit such crime in reckless disregard of the risk of causing such terror or inconvenience. . . ."

The jury also found the defendant guilty of one count of sexual assault in the first degree in the second case in violation of § 53a-70 (a). The defendant was found not guilty of kidnapping in the second degree in both cases.

Originally, the defendant was charged with crimes arising out of four incidents of sexual assault, all of which concerned different victims. The crimes relating to each incident were the subject of separate files, each given a different case number. The defendant moved for separate trials of each of the four cases and the state moved to consolidate them. At the consolidation hearing, the trial court ruled that all four cases should not be consolidated because the jury would have difficulty distinguishing them, but he left the decision to the state as to whether two of the cases, designated as "K.R." and "J.C.," would be consolidated. The court determined that, even if the state did not consolidate the two cases, evidence of each would be cross admissible at each trial.

The state chose to prosecute the two cases together. The two cases share certain similarities. The victim K testified that she has worked as a prostitute to support her drug habit, but that she was not working on the night of the incident. The victim testified that at approximately 3 a.m. on September 13, 1992, she was walking alone in the Fair Haven section of New Haven, on her way to a twenty-four hour store on Grand Avenue. A car slowed down near her more than once. The driver nodded his head to her to see if she was working and she indicated that she was not. The victim described the car as a cream colored, older model Chevrolet or Plymouth. After the car had passed her a second time, the driver opened the passenger door and asked if she was working. When she said that she was not working, the driver got out of the car, grabbed her and pulled her into the car.

The victim testified that the driver of the car held her head down toward the seat as he drove. Eventually the car stopped. The victim later learned that the place where they had stopped was Mill River Street in New Haven. The victim pleaded with the driver to let her go and told him that she had AIDS. The driver only laughed at her and called her various profanities. The driver proceeded to force the victim onto her back, pulled up her shirt, and pulled her pants down. The driver held the victim's hands over her head with one hand and pulled at her clothes with the other. The victim tried to hold her legs together in an effort to stop the driver from penetrating her. The driver grabbed K's throat and threatened her with anal intercourse. K testified that, at that point she stopped struggling with her assailant in the hope that he would loosen his grip on her. He did loosen his grip on her hands and she was able to open the car door. Once she had opened the door, K screamed "fire" and was able to get out of the car. The driver chased her around the car and grabbed her but she escaped. K ran up the street and went inside the gate of a house where she hid until she saw the assailant get back in the car and drive away.

K was able to describe her assailant and his car. She remembered seeing a fishing pole in the backseat. She described the driver of the car as a black man of about thirty years of age with a large build. She described him as having a fat stomach and messy hair with a big Afro. K also described his white T-shirt.

Five days after the attempted assault, K encountered the assailant again as she was walking home at approximately 1 a.m. She heard someone call out to her, and recognized the voice as that of her attacker. When she looked, she saw that the car was the same one she had been in before. K told the driver to leave her alone. He swore at her and pointed a long black gun at her. K hid

behind a tree until he drove away. She recorded the license plate number and gave it to the police.

K identified the defendant as the person who had attempted to assault her sexually and as the person who threatened her, both from a photographic array and in court.

The victim in the second case, J, testified that her assault occurred early on July 30, 1992. She attended a party in Fair Haven and, after trying unsuccessfully to get a ride home, she began walking. The victim was walking beneath an underpass on Humphrey Street when a two door beige Duster slowed up near her. The car passed her and made a U-turn, and subsequently blocked her so that she could not get by. J testified that the driver got out of the car, hit her over the head, and dragged her on her knees into the car by her shirt. He told her that he planned to rape her. He drove to Mill River Road where he stopped the car. He forced J into the backseat and ordered her to take off her clothes. When she refused, he threatened to kill her. Throughout the entire assault, J pleaded with him to let her go. During the assault, which lasted for two and one-half hours, the assailant insulted J with profanities. He forced her to have vaginal and oral intercourse, and threatened her with anal intercourse. When J screamed because of his threats, the assailant turned her onto her stomach and threatened her, showing her a paper bag that he said contained a gun. He told her that if she did not stop screaming, he would kill her. J saw something black and shiny protruding from the bag, but she did not actually see if it was a gun. At this point some motorcycles approached, startling the assailant, who then jumped out of the car. J ran away from the car.

J also testified that she saw a fishing pole in the back of the car. She described her assailant as a black man, age thirty to thirty-five. She described him as fat with

a goatee and a blue tattoo on his arm. She also remarked that he had puffy eyes and bumps on his skin. She described his clothing as a T-shirt, sweatpants, and white Fila sneakers. J identified the defendant as the person who had attacked her, both from a photographic array and in court.

The defendant claims that the trial court improperly (1) consolidated the two cases, (2) admitted into evidence a replica of a gun, (3) refused to permit the defendant to question J about previous sexual assault claims, (4) refused to give a *Secondino* instruction, and (5) denied the defendant's motion for a mistrial following the prosecutor's closing argument.

## I

## CONSOLIDATION

The test for whether cases should be consolidated for trial is multifaceted. The factors to be considered are (1) whether the charges involve discrete, easily distinguished factual scenarios, (2) how long and complex the trial was, and (3) whether one or more of the counts alleges brutal or shocking conduct by the accused. *State v. Chance*, 236 Conn. 31, 42, 671 A.2d 323 (1996); see also *State v. Jennings*, 216 Conn. 647, 583 A.2d 915 (1990); *State v. Herring*, 210 Conn. 78, 554 A.2d 686, cert. denied, 492 U.S. 912, 109 S. Ct. 3230, 106 L. Ed. 2d 579 (1989); *State v. Boscarino*, 204 Conn. 714, 529 A.2d 1260 (1987); *State v. King*, 187 Conn. 292, 445 A.2d 901 (1982); *State v. Silver*, 139 Conn. 234, 93 A.2d 154 (1952).

Before discussing these factors, and the leading cases in which the factors are discussed, we first note that joinder of cases is favored; *State v. Greene*, 209 Conn. 458, 463, 551 A.2d 1231 (1988); and that a trial court is authorized by statute and rule to order a defendant to be tried in one trial on charges arising from separate

cases. General Statutes § 54-57;[3] Practice Book § 829.[4] The court may also order separate trials if it appears that a defendant is prejudiced by joinder. Practice Book § 828.[5] The decision of whether to sever cases is within the discretion of the trial court; *State* v. *Bell*, 188 Conn. 406, 410–11, 450 A.2d 356 (1982); *State* v. *King*, supra, 187 Conn. 299; and will be overturned only if its discretion has been manifestly abused. *State* v. *Herring*, supra, 210 Conn. 94. It is the defendant's burden to show that joinder was improper, and to do so he must show substantial prejudice. *State* v. *Boscarino*, supra, 204 Conn. 714; *State* v. *Rodgers*, 198 Conn. 53, 65, 502 A.2d 360 (1985); *State* v. *Bell*, supra, 410; *State* v. *Jonas*, 169 Conn. 566, 570, 363 A.2d 1378 (1975), cert. denied, 424 U.S. 923, 96 S. Ct. 1132, 47 L. Ed. 2d 331 (1976). "The defendant bears a heavy burden of showing that the denial of severance resulted in substantial injustice and that any resulting prejudice was beyond the curative power of the court's instructions." (Internal quotation marks omitted.) *State* v. *Herring*, supra, 94–95.

This case passes muster when the appropriate factors are applied, and we conclude that the consolidation allowed by the trial court was proper. We dispose of two of the factors relatively easily. The first *Chance* factor is met because the factual scenarios here are distinct, easily distinguished and discrete. The tran-

---

[3] General Statutes § 54-57 provides: "Joinder of offenses of the same character. Whenever two or more cases are pending at the same time against the same party in the same court for offenses of the same character, counts for such offenses may be joined in one information, unless the court orders otherwise."

[4] Practice Book § 829 provides: "The judicial authority may, upon its own motion or the motion of any party, order that two or more informations, whether against the same defendant or different defendants, be tried together."

[5] Practice Book § 828 provides: "If it appears that a defendant is prejudiced by a joinder of offenses, the judicial authority may, upon his own motion or the motion of the defendant, order separate trials of the counts or provide whatever other relief justice may require."

script reveals that the evidence was presented in an orderly fashion. Where the state's orderly presentation of evidence was not confusing and enabled the jurors to consider the evidence relevant to each offense separately and distinctly, we will not conclude that the trial court has manifestly abused its discretion in denying the defendant's motion for severance. *State* v. *Pollitt*, 205 Conn. 61, 68, 530 A.2d 155 (1987); *State* v. *Cain*, 25 Conn. App. 503, 515, 596 A.2d 449 (1991), aff'd, 223 Conn. 731, 613 A.2d 804 (1992).

When incidents are easily distinguished, but contain factual similarities, there is some danger that a jury, under certain circumstances, might use evidence of one to find guilt in the other. Here, the evidence as to each incident would in all likelihood have been admissible in a separate trial of the charges arising out of the other incident.[6] The defendant, therefore, would be in no better position had the charges as to each been tried separately in terms of the jury's ability to use the evidence as to one set of charges in the determination of guilt in the other.[7]

Another factor of *Chance* considers the length and the complexity of the trial. The trial in this case was

---

[6] The defendant does not argue that the evidence is not cross admissible.

[7] Evidence of the charges against the defendant would probably have been cross admissible had they been tried separately because the factual scenarios involved likely would have been deemed part of a common plan or scheme. Although evidence of other crimes is not admissible to show bad character or a disposition to commit a crime, such evidence is admissible to show such issues as a common scheme, intent, malice, identity, motive or opportunity. *State* v. *Greene*, supra, 209 Conn. 464–65. The evidence must be relevant and material to an element of the crime and its probative value must outweigh its prejudicial effect. Id., 465.

In this case, both crimes were perpetrated in the early morning hours in the same neighborhood. The defendant drove both of his victims, who each separately identified him, to the same area of Fair Haven to commit the crimes. The defendant used the same language with each woman, and threatened each with anal intercourse. Both women were attacked when the perpetrator of the crimes discovered that they were not working as prostitutes.

not unnecessarily long or complex. In *Boscarino*, where the joinder of charges relating to four factually similar incidents was concluded to be improper, the trial lasted ten weeks. Here the trial lasted six days and involved only two incidents. Therefore, we conclude that the length of trial and degree of complexity met the second prong of *Chance*.

We turn now to the last factor of *Chance*, concerning the brutality or shocking nature of the crimes. The defendant argues that because of the brutal nature of the crimes, he could not possibly receive a fair trial if they were joined. Admittedly, the incidents in both cases are brutal. The question, however, is how to apply the test of *Chance* and its predecessors when both of two counts allege brutal or shocking conduct by the accused, as opposed to a situation where one of the crimes is brutal or shocking, and the other is not. Our answer revolves around an analysis of the pertinent statutes and case decisions.

Although crimes that are not of the same character may be consolidated for trial; *State* v. *King*, supra, 187 Conn. 299; the legislature, in § 54-57, has specifically condoned the joinder of offenses of the "same character." Here, the two incidents involve offenses of the same character. There is, thus, statutory authority for consolidation.

We next review existing case law for a resolution of the question. In *State* v. *Silver*, supra, 139 Conn. 234, five cases involving two minor victims were properly consolidated where the sexual behavior of the defendant could be considered shocking in all of the cases. In approving the consolidation allowed by the trial court, the *Silver* court noted that it would be rare to have a situation where the evidence as to one crime shows such brutality that a fair consideration of the other crime or crimes in the same case would be diffi-

cult.[8] Id., 240–41. In *Boscarino*, consolidation was improper when four factually similar offenses were tried together in a lengthy and complex trial. The "violent" (brutal) nature of the crimes was noted; *State* v. *Boscarino*, supra, 204 Conn. 723; but the court emphasized that the state conceded that the defendant's participation in the offenses would not have been admissible as substantive evidence had the cases been tried separately. Thus, the prejudice in *Boscarino* arising from the brutality of the crimes occurred because the evidence as to the crimes would not have been cross admissible had the defendant had separate trials.

In *State* v. *Herring*, supra, 210 Conn. 78, consolidation was found to be proper when there were two separate informations involving two separate murders occurring on two different dates. The court discussed the prejudicial effect on a defendant when both crimes are brutal but not "so brutal" as to require separate trials. The court notes that any murder involves violent and upsetting circumstances but not all murders are "so 'brutal and shocking' that a jury, with proper instructions to treat each killing separately, would necessarily be prejudiced by a joint trial." Id., 97. The court states, by way of contrast, that in *Boscarino*, two of the assaults contained facts that showed a greater degree of violent or shocking behavior than the other assaults, thereby causing consolidation to be improper.

*State* v. *Jennings*, supra, 216 Conn. 647, cites both *Boscarino* and *Herring* to reiterate that when both crimes can be characterized as violent, the test becomes whether the facts of one are "so brutal or shocking" as to amount to prejudice if tried together. The crimes

---

[8] At the time that *Silver* was considered, the language of the rules of practice tracked the statutory language of § 54-57 to provide for consolidation when the offenses were of the "same character." The rules of practice were amended in 1976 so that Practice Book § 829 no longer refers to "offenses of the same character."

that were allowed to be consolidated for trial in *Jennings* were assault and kidnapping in one incident and criminal attempt to commit assault and criminal trespass in the other incident. The *Jennings* court distinguishes its conclusion that consolidation was proper from the conclusion in *Boscarino*, noting that one of the crimes in *Boscarino* involved sexual derangement. The two cases consolidated for trial in *Jennings* concerned one assault in which the defendant allegedly cut his victim's neck with a box cutter, and then punched, kicked and "threw her about a parking lot," and another assault in which he cut the victim's finger and arm with a knife. Id., 651.

*State* v. *Chance*, supra, 236 Conn. 31, does not reach the issue of the interplay, for consolidation purposes, between two crimes, each of which is brutal or shocking, because the court does not characterize either crime as such and, in fact, says that they are not. In *Chance*, the crimes consolidated for trial were arson and assault, and each crime involved a separate incident and different victims.

We conclude that when all of the cases sought to be consolidated are brutal or shocking, they may be joined properly, if consolidation does not cause a high risk of one case being tainted by the unusually shocking (e.g., sexual derangement) or brutal nature of the other, or others, especially if the evidence as to each would have been cross admissible had the cases been tried separately.

Sexual assaults in the first degree can be characterized as brutal. Some, however, evince a greater degree of brutality or shocking behavior than others. The question then becomes whether one of the sexual assault crimes with which we are here concerned is so brutal and shocking when compared with the other, that a jury, even with proper instructions, could not treat them

separately. We conclude that the crimes here were such that there was not a high risk that the behavior involved in one would interfere with the jury's consideration of the other.

The defendant argues that the curative instruction given by the court was not sufficient to overcome any prejudice to him. Although jurors are presumed to have followed the instructions of the trial court; see, e.g., *State* v. *Noye*, 199 Conn. 389, 396, 507 A.2d 1001 (1986); it is sometimes the case that "a curative instruction is not inevitably sufficient . . . ." *State* v. *Tinsley*, 180 Conn. 167, 170, 429 A.2d 848 (1980).

Here, the trial court gave the jury ample instruction that it was to keep the crimes charged in the two informations separate. At the beginning of the trial, the court read the charges to the jury and specified that they related to different victims. At the end of the trial, the court also gave the jury very specific directions to keep the charges separate.[9]

Even if the defendant had two separate trials, the jury in each trial, in all likelihood, would have heard evidence involving the other. The defendant's argument that the jury would either confuse the issues or not consider the cases separately as a result of the consolidation cannot prevail. We conclude that the consolidation of the cases in one trial did not substantially prejudice the defendant. The cases were distinct, the issues not complex, the trial not lengthy, and the brutality of the cases, vis-a-vis each other, not of such a nature

---

[9] The trial court's instructions were in part as follows: "The defendant in this case is charged under two informations. Under the information in which J.C. is the complainant, he is charged with two offenses which are stated in two counts. Under the information in which K.R. is the complainant, he is charged with three offenses, which are stated in three counts. You must render a verdict of guilty or not guilty on each of the five counts separately." The court then proceeded to review all the evidence and referred to which charge the evidence applied.

that a jury could not treat each separately. *State* v. *Jennings*, supra, 216 Conn. 648; *State* v. *Herring*, supra, 210 Conn. 78.

## II

## EVIDENTIARY CLAIM

The defendant's second claim is that a replica of a gun that was found in the defendant's car should not have been introduced into evidence because the victims could not identify it as *the* gun that had been used in the crimes. We conclude that the introduction of this evidence may have been improper because there was no testimony to indicate that it was a replica of a gun used in the commission of the crimes. We also conclude that the introduction, if improper, was harmless.

The gun was identical in make and model to one found in the defendant's car and was introduced into evidence as a replica of that gun. It is clear from the transcripts that the jury could not have thought that it was the actual gun used. In order to be relevant, however, the state must connect the weapon to the crimes. *State* v. *Onofrio*, 179 Conn. 23, 31, 425 A.2d 560 (1979); *State* v. *Coleman*, 35 Conn. App. 279, 287, 646 A.2d 213, cert. denied, 231 Conn. 928, 648 A.2d 879 (1994). The defendant claims that the gun was not relevant because the victims were not able to identify it as the type used in the commission of the crimes.[10] The defendant is correct. Furthermore, one of the victims did not actually see a gun.

The defendant's evidentiary claim is not constitutional. "When a trial error in a criminal case does not involve a constitutional violation the burden is on the defendant to demonstrate the harmfulness of the court's error. . . . The defendant must show that it is more probable than not that the erroneous action of the court

---

[10] Defense counsel objected on these grounds at trial.

affected the result." (Citation omitted; internal quotation marks omitted.) *State* v. *Moody*, 214 Conn. 616, 629, 573 A.2d 716 (1990), quoting *State* v. *Ruth*, 181 Conn. 187, 196–97, 435 A.2d 3 (1980). Here, the state made clear that the gun was a replica of the gun found in the defendant's car. The state's assertion that such a gun was found in the defendant's car served as only one of many factors from which the jury could conclude beyond a reasonable doubt that he was the perpetrator of the crimes. Both victims, independently, positively identified the defendant from photographic arrays and in the courtroom. In addition to the gun replica, other evidence was presented at trial, including a description of the defendant's car and correlating photographs of it, the description of the defendant's physical characteristics and clothing, and the description and photograph of a fishing pole found in the defendant's car. Overall, we conclude that the defendant has not demonstrated that the introduction of the gun more probably than not affected the outcome of the case.

### III

### CONFRONTATION CLAIM

The defendant's third claim is that he was not permitted to question J outside of the presence of the jury about two rapes that were mentioned in her hospital record but otherwise went unreported. He claims that his right of confrontation has been violated. These claims were made at a hearing outside the presence of the jury pursuant to § 54-86f, the rape shield statute.

Courts have recognized that prior false claims of sexual assault may be relevant to a complainant's credibility. See *State* v. *Slater*, 23 Conn. App. 221, 225, 579 A.2d 591 (1990). These claims must, however, be proven false. Id. "Without evidence of the falsity of the prior accusation . . . the defendant cannot show the relevance of the proposed cross-examination." *State* v. *Kel-*

*ley,* 229 Conn. 557, 563, 643 A.2d 854 (1994). In this case, the defense attorney had no information that J's prior sexual assault claims were false. The defendant claims that although he had no evidence that the prior claims were false, he was prejudiced by not being permitted to question the victim about them because she has a history of delusional behavior. There was, however, no evidence that, if the victim had delusions, they were of a sexual nature. See *State* v. *Manini,* 38 Conn. App. 100, 115, 659 A.2d 196, cert. denied, 234 Conn. 920, 661 A.2d 99 (1995). On the contrary, it is clear from the record that the victim's medical records show that her history of mental health problems stems from the loss of a child and has nothing to do with sexual delusions. The questioning proposed by the defendant is improper in the absence of proof of any false accusations made by the victim. *State* v. *Cassidy,* 3 Conn. App. 374, 382, 489 A.2d 386, cert. denied, 196 Conn. 803, 492 A.2d 1239 (1985).

The right of a defendant to cross-examine is not absolute. *Chambers* v. *Mississippi,* 410 U.S. 284, 295, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973). "The court has wide discretion to determine the scope of cross-examination." *State* v. *Hernandez,* 224 Conn. 196, 208, 618 A.2d 494 (1992). Claims of undue restrictions on cross-examination ordinarily involve a two-prong analysis: (1) whether constitutional standards have been met; and (2) if so, whether the trial court abused its discretion. *State* v. *Cox,* 7 Conn. App. 377, 384, 509 A.2d 36 (1986). An examination of the record in this case reveals that the cross-examination of J satisfied the requirements of the sixth amendment. Defense counsel was permitted to develop facts from which the jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability and the bias of the witness, thus satisfying the constitutional standard. See *State* v. *Gaynor,* 182 Conn. 501, 509, 438 A.2d 749 (1980).

The trial court did not abuse its discretion in excluding the proposed questioning.

## IV

### *SECONDINO* CLAIM

The defendant's fourth claim is that the court failed to give a *Secondino* instruction regarding K's brother, who did not testify at trial. We do not agree that such an instruction was necessary. According to *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 675, 165 A.2d 598 (1960), the witness must be one that is available and that the party would ordinarily produce. Although K testified that when she returned home she told her brother about what had happened to her, it is unlikely that the state would have called him to testify since he was an incarcerated felon at the time of trial.

In addition, the brother's testimony would have been cumulative. A prospective witness whose testimony would be comparatively unimportant, cumulative, or inferior to what has already been offered, should be dispensed with on the grounds of expense and inconvenience, without the need for an adverse inference charge. *State* v. *Owen*, 40 Conn. App. 132, 139, 669 A.2d 606, cert. denied, 236 Conn. 912, 673 A.2d 114, cert. denied, 237 Conn. 922, 676 A.2d 1376 (1996); *State* v. *Battle*, 39 Conn. App. 742, 745, 667 A.2d 1288 (1995), cert. denied, 237 Conn. 922, 676 A.2d 1376 (1996).

## V

### MISTRIAL CLAIM

The defendant's fifth and final claim is that the trial court improperly denied his motion for a mistrial after the prosecutor's rebuttal closing argument. The defendant claims that the prosecutor's remarks improperly

appealed to the jury to protect society from future criminal acts by the defendant.[11]

" '[B]y reason of his office, [the prosecutor] usually exercises great influence upon jurors. His conduct and language in the trial of cases in which human life or liberty are at stake should be forceful, but fair, because he represents the public interest, which demands no victim and asks no conviction through the aid of passion, prejudice, or resentment.' " *State* v. *Couture*, 194 Conn. 530, 564–65, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985).

A prosecutor must refrain from trying to arouse prejudice in the jurors; *State* v. *Falcone*, 191 Conn. 12, 22, 463 A.2d 58 (1983); or from diverting their attention from their duty to base their conclusions on the evidence actually presented at trial. *State* v. *Couture*, supra, 194 Conn. 562. This does not mean, however, that a prosecutor cannot present a strong and cogent argument. *State* v. *Floyd*, 10 Conn. App. 361, 368, 523 A.2d 1323, cert. denied, 203 Conn. 809, 525 A.2d 523, cert. denied, 484 U.S. 859, 108 S. Ct. 172, 98 L. Ed. 2d 126 (1987).

The prosecutor's commentary in the rebuttal argument was not so damaging to the defendant as to require a mistrial. He did not ask the jury to find the defendant guilty, regardless of the state's evidence, in order to prevent him from committing future crimes.

---

[11] The remarks at issue were as follows: "You're not here to do the easy thing. The oath you took is to do what justice requires. And justice, in this case, requires that the law be enforced, it can't be enforced by the police, they just make arrests. It can't be enforced by his Honor, because the Judge only presides over jury trials. If the law is going to be enforced, it's got to be enforced by jurors like yourselves. These laws are enacted to protect, not just the Ks not just the Js, but all of us, all of us are protected . . . . And now, for the protection of society, you, too, must help by enforcing the law and finding [the defendant] guilty of each of these charges."

"When a verdict is challenged on the basis of the prosecutor's allegedly prejudicial remarks, the defendant bears the burden of proving the remarks prejudicial in light of the whole trial." *State* v. *Floyd,* supra, 10 Conn. App. 364; see also *State* v. *Williams,* 204 Conn. 523, 529 A.2d 653 (1987); *State* v. *Couture,* supra, 194 Conn. 530. "The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct." *State* v. *Binet,* 192 Conn. 618, 628, 473 A.2d 1200 (1984). Here, the defendant has not borne his burden of proof. We conclude that the prosecutor's remarks in rebuttal did not deprive the defendant of a fair trial.

The judgments are affirmed.

In this opinion the other judges concurred.