# STATE OF CONNECTICUT *v.* MICHAEL WALSH
## (AC 16578)

O'Connell, C. J., and Foti and Sullivan, Js.

Argued September 15, 1998—officially released April 13, 1999

*Pamela S. Nagy*, special assistant public defender, for the appellant (defendant).

*Denise B. Smoker*, assistant state's attorney, with whom, on the brief, were *Maureen M. Keegan*, supervisory assistant state's attorney, and *Cara Eschuk*, assistant state's attorney, for the appellee (state).

*Opinion*

O'CONNELL, C. J. The defendant, Michael Walsh, appeals, following a jury trial, from judgments of conviction of four counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2),[1] two counts of risk of injury to a child in violation of General Statutes § 53-21[2] and one count of sexual assault in the

---

[1] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ."

[2] General Statutes § 53-21 provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child, or (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of a class C felony."

fourth degree in violation of General Statutes § 53a-73a (1) (A).[3] The trial court granted the defendant's motion for a judgment of acquittal of an additional risk of injury count.

The defendant claims that the trial court improperly (1) consolidated two cases, (2) admitted evidence of uncharged misconduct, (3) admitted irrelevant hearsay evidence, (4) refused to give his requested jury charge concerning inconsistent statements and (5) refused to disclose a victim's confidential records. We affirm the judgments of the trial court.

The genesis of this appeal was two separate informations, each charging the defendant with sexually assaulting a girl. The victim, A, was born on December 7, 1985, and the victim, H, was born on August 9, 1984. Pursuant to General Statutes § 54-57[4] and Practice Book § 829, now § 41-19,[5] the trial court, pursuant to the state's motion, consolidated both informations for trial.

The jury reasonably could have found the following facts. In February and March, 1995, the defendant lived in Naugatuck with his girlfriend, her nine year old daughter, A, and their infant son. One morning after his girlfriend had left for work, the defendant ordered A into his bedroom and anally penetrated her. A screamed and tried to get out from under him. The defendant similarly assaulted her three more times in February

---

[3] General Statutes § 53a-73a (a) provides in relevant part: "A person is guilty of sexual assault in the fourth degree when: (1) Such person intentionally subjects another person to sexual contact who is (A) under fifteen years of age . . . ."

[4] General Statutes § 54-57 provides: "Whenever two or more cases are pending at the same time against the same party in the same court for offenses of the same character, counts for such offenses may be joined in one information unless the court orders otherwise."

[5] Practice Book § 41-19 provides: "The judicial authority may, upon its own motion or the motion of any party, order that two or more informations, whether against the same defendant or different defendants, be tried together."

and March, 1995. Following the last assault, the defendant threatened to "double it" the next time. A subsequently spoke with Detective Laura Wigglesworth of the Naugatuck police department, informing her that the defendant might also have assaulted her friend H.

H was similarly assaulted by the defendant when she was staying overnight at his house. The assault took place in the defendant's bedroom where he had H lie on his bed while he went behind her, pulled up her nightgown and, without removing her underpants, placed his penis between her legs. He did not, however, penetrate her. The defendant then went to his dresser, picked up a gun and, while loading it, threatened to kill H if she told anyone about the incident.

Additional facts will be included in the analysis of individual claims.

I

The defendant first claims that the trial court improperly granted the state's motion to consolidate the counts involving A with counts involving H. Following oral argument, the trial court ruled that the two cases were "factually similar and legally connected" and that there was a common scheme of sexually abusing young girls. The similarities that the court found were that (1) both victims were young girls, (2) all the alleged abuse occurred at the defendant's home, (3) similar threats were made against each victim and (4) the sexual assaults were all perpetrated in a similar manner.

The trial court has discretion to determine whether separate cases involving the same defendant should be consolidated; *State* v. *Pollitt*, 205 Conn. 61, 67, 530 A.2d 155 (1987); and the exercise of that discretion may not be disturbed on appeal unless it has been manifestly abused. Id., 67–68. To demonstrate that the trial court abused its discretion, the defendant bears the heavy

burden of convincing this court that the joinder resulted in substantial injustice. Id., 68.

In Connecticut, joinder of cases is favored. *State* v. *Hilton*, 45 Conn. App. 207, 213, 694 A.2d 830, cert. denied, 243 Conn. 925, 701 A.2d 659 (1997), cert. denied, 522 U.S. 1134, 118 S. Ct. 1091, 140 L. Ed. 2d 147 (1998). Joinder " 'expedites the administration of justice, reduces the congestion of trial dockets, conserves judicial time, lessens the burden upon citizens who must sacrifice both time and money to serve upon juries, and avoids the necessity of recalling witnesses who would otherwise be called upon to testify only once.' " *State* v. *Vinal*, 198 Conn. 644, 649 n.4, 504 A.2d 1364 (1986).

"Whether a joint trial will be substantially prejudicial to the defendant's rights means something more than that it will be less advantageous to [him]." *State* v. *Lee*, 32 Conn. App. 84, 106, 628 A.2d 1318, cert. denied, 227 Conn. 924, 632 A.2d 702 (1993), cert. denied, 510 U.S. 1202, 114 S. Ct. 1319, 127 L. Ed. 2d 668 (1994). In determining whether joinder is appropriate, the court must consider several factors. "The factors to be considered are (1) whether the charges involve discrete, easily distinguished factual scenarios, (2) how long and complex the trial was, and (3) whether one or more of the counts alleges brutal or shocking conduct by the accused." *State* v. *Stevenson*, 43 Conn. App. 680, 686, 686 A.2d 500 (1996), cert. denied, 240 Conn. 920, 692 A.2d 817 (1997). If any or all of these factors are present, a reviewing court must decide whether the trial court's jury instructions cured any prejudice that might have occurred from improper joinder. *State* v. *Lee*, supra, 106–107.

First, the factual scenarios here are distinct, easily distinguished and discrete. Our review of the record indicates that the evidence was presented in an orderly manner. We will not conclude that the trial court has abused its discretion in consolidating two cases where

the "state's orderly presentation of evidence has prevented confusion of the jury and has enabled the jury to consider the evidence relevant to each charge separately and distinctly." *State* v. *Pollitt*, supra, 205 Conn. 68.

It is true that, "[w]hen incidents are easily distinguished, but contain factual similarities, there is some danger that a jury, under certain circumstances, might use evidence of one to find guilt in the other." *State* v. *Stevenson*, supra, 43 Conn. App. 688. In this case, however, the evidence admissible in the trial of the charges arising from one incident would likely be admissible in a separate trial of the charges arising from the other incident because "[e]vidence tending to prove prior criminal conduct which is relevant and material to an element of the crime, identity, malice, motive, or which shows a pattern of criminal activity is admissible if the trial court determines, in the exercise of its sound discretion, that its probative value outweighs its prejudicial impact." *State* v. *Howard*, 187 Conn. 681, 685, 447 A.2d 1167 (1982). The jury, therefore, would have been able to use the evidence stemming from one set of charges to determine the defendant's guilt in the trial stemming from the other set of charges.

Second, the trial was not exceptionally long or complex. It lasted only six days and involved only two victims. See *State* v. *Chance*, 236 Conn. 31, 43, 671 A.2d 323 (1996) (five day trial not unduly long or complex); *State* v. *Stevenson*, supra, 43 Conn. App. 689 (trial not unduly long or complex when it lasted six days and involved only two incidents).

Third, the defendant was not prejudiced by the joinder of two brutal and shocking cases. The defendant argues that the nature of the brutal and shocking allegations in the trial involving A made it impossible for the jury to consider independently the charges in the trial

involving H. If both cases sought to be consolidated are brutal or shocking, "they may be joined properly, if consolidation does not cause a high risk of one case being tainted by the unusually shocking . . . or brutal nature of the other . . . ." *State* v. *Stevenson*, supra, 43 Conn. App. 691.

We agree with the defendant that all of the sexual assaults charged to him were brutal and shocking. We cannot, however, assume that any and all sexual assaults are so brutal and so shocking that a defendant would always be prejudiced by a joint trial. Sexual assault cases should be severed only where one of the sexual assault crimes with which the defendant is charged is "so brutal and shocking when compared with the other, that a jury, even with proper instructions, could not treat them separately." Id., 691–92. We conclude that the case involving A was not so brutal and shocking when compared to the case involving H that consolidation would create the risk that evidence of the defendant's assaults against A would interfere with the jury's consideration of the defendant's assaults against H.

Even if the trial court had improperly consolidated the two cases, its jury instructions cured any prejudice that might have occurred. In the absence of contrary evidence, jurors are presumed to have followed the instructions of the trial court. *State* v. *Moye*, 199 Conn. 389, 396, 507 A.2d 1001 (1986). The trial court instructed the jury, when deliberating over one case, not to infer that the defendant had a criminal propensity to commit this type of crime on the basis of the evidence introduced in the other case. Accordingly, we conclude that the trial court sufficiently instructed the jury to keep the crimes charged in the two informations separate.

The defendant relies on *State* v. *Boscarino*, 204 Conn. 714, 722–25, 529 A.2d 1260 (1987), to argue that the two

trials should not have been consolidated. The defendant's reliance on *Boscarino*, however, is misplaced. In *Boscarino*, the trial court joined four cases arising from the defendant's repeated sexual assaults over several years. Our Supreme Court applied the three prong test and ordered that the trials be severed, concluding that their consolidation allowed the jury to aggregate impermissibly the evidence. First, the Supreme Court concluded that the cases for which the defendant was being jointly tried did not involve discrete, easily distinguishable factual scenarios. Id., 722–23. In fact, the state *conceded* that if the trials were held separately, evidence from one would not have been admissible as substantive evidence in the others. Second, the ten week trial consisting of testimony from fifty-five witnesses was lengthy and complex, increasing the risk that the jury would weigh the evidence against the defendant cumulatively. Id., 723–24. Third, the joinder permitted the state to present the jury with brutal and shocking evidence that it could not have introduced had the trials been held separately. Id., 723.

Unlike *Boscarino*, in this case (1) the evidence from one trial would have been admissible in the other, (2) the trial was neither long nor complex and (3) the defendant was not prejudiced by the joinder of the brutal and shocking crimes for which he was charged. Thus, *Boscarino* is inapposite to the present case. Accordingly, we conclude that joinder in the present case did not result in substantial injustice and that the trial court did not abuse its discretion in joining the two cases.

## II

The defendant next claims that the trial court abused its discretion by improperly admitting evidence under the uncharged misconduct doctrine. "As a general rule, evidence of prior misconduct is inadmissible to prove that a criminal defendant is guilty of the crime of which

the defendant is accused. . . . Such evidence cannot be used to suggest that the defendant has a bad character or a propensity for criminal behavior. . . . On the other hand, evidence of crimes so connected with the principal crime by circumstance, motive, design, or innate peculiarity, that the commission of the collateral crime tends directly to prove the commission of the principal crime, is admissible. . . . We have developed a two part test to determine the admissibility of such evidence. First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. . . . Second, the probative value of the evidence must outweigh its prejudicial effect." (Citations omitted; internal quotation marks omitted.) *State* v. *Kulmac*, 230 Conn. 43, 60–61, 644 A.2d 887 (1994).

The admission of evidence of prior uncharged misconduct is within the discretion of the trial court. The trial court's discretionary determination that the probative value of such evidence outweighs its prejudicial effect will be disturbed on appeal only for a manifest abuse of discretion. Id., 61. Every reasonable presumption will be given in favor of the trial court's ruling. Id. "We are more liberal in admitting evidence of other criminal acts to show a common scheme or pattern in sex related crimes than other crimes." Id., 62; *State* v. *Hauck*, 172 Conn. 140, 145, 374 A.2d 150 (1976).

Prior to trial, the state filed written notice that it intended to adduce evidence of uncharged misconduct to show intent and a course of criminal conduct by the defendant. The notice expressly stated that "at 1492 Madison Avenue in the city of Bridgeport, the defendant restrained a child whose birth date is December 7, 1985, by tying her legs together and assaulting her and that at that time or shortly thereafter, she had no underwear on." The child referred to in this notice was A.

From a combination of the testimony of A and Donna Santos, a downstairs neighbor, the jury reasonably could have found that the defendant tied A's legs together with a piece of plastic and proceeded to tickle her. Santos heard her screaming and also heard her knees and elbows banging against the floor. Shortly after the incident, Santos observed A wearing a night-gown or an adult T-shirt, but no underpants.

In overruling the defendant's objection to the admission of this evidence, the trial court ruled that it "doesn't find anything that occurred here to be too remote in time. Each incident involves a young child, each incident involves the same child, each incident involves a child that was in the household in which the defendant lived and the same child—the common thread of it is the use of force to prevent resistance. In this case there was some instrumentality used to tie the child's legs. There was no evidence in [the] direct testimony from A of any sexual act. However, there is evidence of an act consisting of assaultive behavior to a minor child with whom he lived who had been prevented from resisting by being immobilized. There is other testimony where she talks about being subjected to anal inter-course by the defendant where there is her testimony that she was immobilized by him putting his hand on her back so she couldn't move. So to that extent I think it's evidence of a prior act which is relevant in showing a course of conduct, assaultive, although in this case not necessarily sexually assaultive, showing a common design to assault this child with whom he lived."

The state claims that the prior evidence was admitted to show a common scheme or plan. "Evidence of prior sex offenses committed with persons other than the prosecuting witness is admissible to show a common design or plan where the prior offenses (1) are not too remote in time; (2) are similar to the offense charged;

and (3) are committed upon persons similar to the prosecuting witness." *State* v. *Esposito*, 192 Conn. 166, 169–70, 471 A.2d 949 (1984).

The defendant argues that his touching of A did not rise to the level of misconduct because he touched her only while she was clothed. The defendant argues that the trial court abused its discretion by admitting evidence in the trial of the uncharged misconduct against H because tickling is not similar to sexual assault.

The trial court concluded, and the state argues on appeal, that the evidence of the prior uncharged misconduct was admitted to show a common scheme or plan and was therefore admissible. The defendant does not argue that the offenses were too remote in time or were not committed on a person similar to the prosecuting witness, H. Rather, the defendant argues that the prior uncharged misconduct was not similar to the offenses for which he was charged. The defendant further claims that even if his conduct was similar to the offenses for which he was charged, the evidence should have been excluded because its prejudicial effect outweighed its probative value. We do not agree.

Although the defendant claims that he merely tickled A while she was clothed, we cannot conclude that the trial court manifestly abused its discretion by allowing evidence of this misconduct as prior uncharged misconduct. Santos testified that she heard A screaming and might have heard her crying. Moreover, Santos testified that A was not wearing underpants when she talked to Santos. Accordingly, the trial court properly allowed the jury to hear Santos' testimony in order to decide for itself whether the defendant's actions established a common scheme or design.

"Evidence of a defendant's prior sexual misconduct with his victim is admissible to prove, inter alia, a pattern of criminal activity, provided that the trial court

determines the probative value of such evidence out-weighs its prejudicial effect, and that the court also gives an appropriate limiting instruction." *State* v. *Tirado*, 21 Conn. App. 449, 452, 574 A.2d 252, cert. denied, 215 Conn. 816, 576 A.2d 546 (1990). In this case, because Santos' testimony was highly probative of the defendant's continuing course of sexual misconduct with A, the court did not abuse its discretion by finding that the probative value of the evidence outweighed its prejudicial effect. Moreover, the court, in its jury instructions, warned the jury to use Santos' testimony only as evidence of a course of criminal conduct by the defendant and not as evidence of the defendant's criminal disposition. Accordingly, the trial court did not abuse its discretion in admitting evidence of the tickling as prior uncharged misconduct.

## III

The defendant next complains that the trial court abused its discretion in admitting an out-of-court statement concerning sexual activity that A may have observed. Additional facts are necessary for a resolution of this claim. Wigglesworth testified on direct examination that the defendant's girlfriend told her that she and the defendant had previously engaged in anal sex. The defendant objected, arguing that this statement was irrelevant and hearsay. The court overruled the objection.

The defendant argues that the girlfriend's statement to Wigglesworth is hearsay because it is an out-of-court statement offered for its truth and does not fall within any of the hearsay exceptions. Additionally, the defendant claims that the statement was not offered to show the girlfriend's state of mind because she did not think that A had witnessed her and the defendant engaging in anal intercourse.

"We do not reach the issue of whether the trial court's ruling was proper. This is a claim of an erroneous evidentiary ruling and as such does not implicate the constitution. In nonconstitutional claims, the defendant has the burden of demonstrating the harmfulness of the claimed error. *State* v. *Robinson*, 213 Conn. 243, 259, 567 A.2d 1173 (1989). He must show that it is more probable than not that the claimed error affected the verdict. Id." *State* v. *Williams*, 30 Conn. App. 654, 656, 621 A.2d 1365 (1993).

It does not appear that the exclusion of Wigglesworth's testimony would have resulted in a different verdict or that its admission would require reversal on appeal. "[A] judgment need not be reversed merely because inadmissible evidence has been admitted, if permissible evidence to the same effect has also been placed before the jury." Id.

Here, as part of the defendant's case-in-chief, the defendant's girlfriend testified concerning her sexual conduct with the defendant, including anal intercourse. Accordingly, Wigglesworth's testimony was cumulative of properly admitted evidence.

## IV

The defendant next claims that the trial court improperly refused to instruct the jury in accordance with his requested charge on inconsistent statements. He argues that correct instruction on inconsistent statements was particularly vital to his case because the crux of his defense was that both A and H had falsely accused him.

The defendant contends that the court's instructions did not provide adequate guidance as to how the jury should have considered and weighed the victims' testimony in light of the numerous inconsistencies in their statements. The court, however, refused to give the

defendant's instruction but instead instructed the jury generally about the credibility of witnesses.

We will not reverse a conviction solely because a charge as given was not in the language of a party's request. *State* v. *Coleman*, 35 Conn. App. 279, 290, 646 A.2d 213, cert. denied, 231 Conn. 928, 648 A.2d 879 (1994). To pass constitutional muster, jury instructions must be correct in law, adapted to the issues in the case and sufficient to guide the jury in arriving at a verdict. *State* v. *Wolff*, 29 Conn. App. 524, 531, 616 A.2d 1143 (1992). The test that we apply to any part of a charge is whether the charge as a whole presents the case to a jury in such a manner that no injustice is perpetrated. *State* v. *Derrico*, 181 Conn. 151, 170, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980). In the present case, the court's instruction viewed in its entirety was correct in law and fairly presented the case to the jury.

V

In his final issue, the defendant argues that the trial court's denial of access to some of H's school and psychiatric records is an abuse of discretion and a violation of his constitutional rights. This argument is without merit.

The facts pertinent to this issue are as follows. Prior to trial, certain of H's school and psychiatric records were subpoenaed by the defendant, who hoped to use them for impeachment purposes. He believed these records would have relevance to H's ability to perceive and relate the truth. The court conducted an in camera review of the records, and turned over to the defendant numerous documents it deemed exculpatory.[6]

---

[6] The released records are as follows: (1) records from Priority Care, Inc., dated June 27, 1994; (2) records from Priority Care, Inc., dated February 24, 1995; (3) records from Yale-New Haven Hospital dated June 2, 1994; (4) records from Yale-New Haven Hospital dated June 3, 1994; (5) records from

Other records that were not turned over to the defendant were sealed by the court. The defendant requested that these additional records be released, claiming that all of the exculpatory information to which he was entitled had not been provided and that he could not fully understand the information provided to him without the benefit of the additional records. The defendant does not question the procedure employed by the trial court in ruling on his motion but, rather, alleges that it improperly refused to release certain portions of those records. The defendant's motion to unseal these documents was denied. "While we are mindful that the defendant's task to lay a foundation as to the likely relevance of records to which he is not privy is not any easy one, we are also mindful of the witness' legitimate interest in maintaining, to the extent possible, the privacy of her confidential records." *State* v. *Bruno*, 236 Conn. 514, 531–32, 673 A.2d 1117 (1996). On review, we must determine whether he trial court's decision constituted an abuse of discretion. Id., 534.

On appeal, this court has the responsibility of conducting its own in camera inspection of the sealed records to determine if the trial court abused its discretion in refusing to release those records to the defendant. *State* v. *Tyson*, 43 Conn. App. 61, 70, 682 A.2d 536, cert. denied, 239 Conn. 933, 683 A.2d 401 (1996). The defendant argues that the court's denial of certain school and psychiatric records was an abuse of discretion and a violation of his constitutional rights. We are not persuaded.

Yale-New Haven Hospital dated June 6, 1994; (6) records from Yale-New Haven Hospital dated June 14, 1994; (7) records from Child Guidance Center of Greater Bridgeport, Inc. (Child Guidance Center), dated July 18, 1994; (8) records from Child Guidance Center dated April 6, 1995; (9) records from Child Guidance Center dated April 27, 1995; (10) records from Child Guidance Center dated June 29, 1995; and (11) records from Child Guidance Center dated April 3, 1996.

"The linchpin of the determination of the defendant's access to the records is whether they sufficiently disclose material 'especially probative of the ability to "comprehend, know and correctly relate the truth'" . . . so as to justify breach of their confidentiality . . . ." (Citation omitted.) *State* v. *Storlazzi*, 191 Conn. 453, 459, 464 A.2d 829 (1983). "Whether and to what extent access to the records should be granted to protect the defendant's right of confrontation must be determined on a case by case basis." Id. At this stage in the proceedings, when the trial court has reviewed the records in camera, access to the records " 'must be left to the discretion of the trial court which is better able to assess the probative value of such evidence as it relates to the particular case before it' . . . and to weigh that value against the interest in confidentiality of the records." (Citation omitted.) Id. We review the trial court's decision under an abuse of discretion standard.

We have carefully examined the challenged records and conclude that the trial court reasonably could have found that they contain no evidence that is probative of H's testimonial capacity or that is relevant to her impeachment. The trial court did not abuse its discretion in denying the defendant's motion for disclosure of H's school and psychiatric records. The trial court reasonably could have found that all relevant documents were released and the remaining documents contained no evidence that was probative of H's testimonial capacity or that was relevant to impeachment.

The judgments are affirmed.

In this opinion the other judges concurred.