STATE OF CONNECTICUT *v.* ALFREDO VARGAS
(AC 23158)

Bishop, McLachlan and Hennessy, Js.

Argued September 9—officially released December 9, 2003

*George G. Kouros*, special public defender, with whom were *Michael O. Sheehan*, special public defender, and, on the brief, *Richard A. Reeve*, for the appellant (defendant).

*Frederick W. Fawcett*, supervisory assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Cornelius P. Kelly*, senior assistant state's attorney, for the appellee (state).

*Opinion*

McLACHLAN, J. The defendant, Alfredo Vargas, appeals from the judgment of conviction, rendered after

a jury trial, of sexual assault in the first degree in viola-
tion of General Statutes § 53a-70 (a) (2) and risk of
injury to a child in violation of General Statutes § 53-
21 (a) (2). On appeal, the defendant claims that the trial
court improperly (1) remarked in the presence of the
jury as to the victim's competency to testify, thereby
bolstering the credibility of her testimony, (2) restricted
the defendant's cross-examination of several of the
state's key witnesses, (3) issued an inappropriate jury
instruction with respect to the victim's in-court identifi-
cation of the defendant as the perpetrator, (4) demon-
strated a lack of impartiality in its treatment of the
victim and the defendant, (5) allowed the state to make
improper remarks in its closing argument and (6) denied
the defendant's motion to unseal the victim's confiden-
tial records.[1] We reverse the judgment of the trial court.

The following facts were adduced at trial. For several
years, up to and including October, 2000, the victim,
born April 25, 1996, often accompanied her father to
an Orthodox Jewish synagogue.[2] During that period of
time, the defendant volunteered at the same synagogue
on the Sabbath and on holidays, performing various
tasks that Orthodox practice prohibits followers from
performing, including operating electrical appliances.
When the victim would accompany her father to the
synagogue, she would not partake in the religious ser-
vices, but would instead play in the backyard of the
synagogue where she occasionally had exposure to the
defendant. On some of those occasions during the sum-
mer months of 2000 up to and including October 15,
2000, the defendant engaged in sexual intercourse with

[1] Though the defendant set forth seven separate issues on appeal, we
combine the two issues pertaining to the court's jury instruction.

[2] In accordance with our policy of protecting the privacy interests of the
victims of sexual abuse, we decline to identify the victim or others through
whom the victim's identity may be ascertained. See General Statutes § 54-86e.

the victim, to wit, digitally penetrating her anus, penetrating her vagina and causing her to perform fellatio on him. At the time of the sexual abuse, the victim was four years old. Soon after the sexual abuse of October 15, 2000, the victim disclosed the abuse to various members of her family, and the matter was then referred to the local police, a pediatrician and a social worker.

In a two count amended information dated March 11, 2002, the state charged the defendant with sexual assault in the first degree and risk of injury to a child. A jury trial commenced on April 2, 2002, and, on April 10, 2002, the jury found the defendant guilty on both counts. On May 24, 2002, the court imposed a total effective sentence of fifteen years incarceration, execution suspended after twelve years with ten years probation.[3] The defendant appeals from the judgment of conviction.

I

The defendant's first claim is that the court improperly remarked in the presence of the jury about the victim's competency to testify such that the court appeared to vouch for the credibility of her testimony. Specifically, the defendant asserts that the court declared to the jury its findings following the victim's competency hearing and, on at least four additional occasions during defense counsel's cross-examination of the victim, repeated that finding in the presence of the jury.[4] We agree that the court's remarks were

[3] On the count of sexual assault in the first degree, the defendant was sentenced to a term of fifteen years incarceration, execution suspended after twelve years with ten years probation. On the count of risk of injury to a child, the defendant was sentenced to a term of ten years, to run concurrently with the sentence for sexual assault in the first degree.

[4] The defendant's second and third claims on appeal are, respectively, that the court impermissibly restricted cross-examination of the victim and issued an inappropriate jury instruction as to identification of the defendant. Inasmuch as our analysis of the court's remarks implicates defense counsel's cross-examination of the victim and the jury instruction, we address those matters, but do so without specifically reaching the merits of those claims.

improper and deprived the defendant of his right to a fair trial.

The first challenged remark arose at the conclusion of the court's voir dire of the victim to determine her competency to testify.[5] The court announced its finding to the jury, stating: "I find a fundamental ability [in the victim] to recognize that it's wrong to not tell the truth in her own manner of speaking."

Subsequently, during cross-examination of the victim, defense counsel posed a question as to her knowledge of what it means to tell the truth. The court interjected: "I think I've already been satisfied that the oath administered is sufficient to put me on notice that she understands the nature of telling the truth and penalty could follow for not telling the truth, as she has learned in the common experiences of life. There will be no need to further inquire on that subject."

Later in the same cross-examination, defense counsel posed a question to the victim about an out-of-court statement she had made concerning what it meant to

[5] We note for clarity the scope of the defendant's claim on appeal. Although the need for a hearing to determine the victim's competency was obviated by the child witness competency rule; see General Statutes § 54-86h; the defendant does not challenge the court's decision to conduct such a hearing. Additionally, the defendant clarified at oral argument before this court that he also does not challenge the trial court's determination to conduct the hearing in the presence of the jury, even though he specifically requested that the hearing be conducted outside the presence of the jury. Although courts in other jurisdictions have held that it is reversible error to conduct a competency hearing in the presence of the jury; see, e.g., *Commonwealth v. Washington*, 554 Pa. 559, 566, 722 A.2d 643 (1998); that issue has not yet been addressed in Connecticut. As the defendant here takes issue only with the court's remarks about the victim's competency and not the circumstances surrounding the competency hearing, we do not address that issue.

General Statutes § 54-86h provides: "No witness shall be automatically adjudged incompetent to testify because of age and any child who is a victim of assault, sexual assault or abuse shall be competent to testify without prior qualification. The weight to be given the evidence and the credibility of the witness shall be for the determination of the trier of fact."

tell the truth. Following an objection by the state, the court stated: "Well, I can assure you of one thing, I've already made that determination, and you have inquired, bringing my attention to that function of the court, and I have so indicated it to you."

Defense counsel again attempted to question the victim as to her out-of-court statement. Counsel asked: "Didn't you tell the lady at the hospital you did not know what it meant to tell the truth?" Following an objection by the state, the court stated: "Let me point out to you that while that may be true at that time and place, *my determination of her telling the truth and the ability to do so is made at this time and place.* And, that would be sufficient for this court's purposes at this time." (Emphasis added.)

Finally, the defendant challenges the following statements made by the court during defense counsel's cross-examination of the victim:

"[Defense Counsel]: When you said this morning in court that Fredo touched [you], [were] your mom and dad there, too, at the same place?

"[The Victim]: There, too?

"[The Prosecutor]: I'm going to object. . . . I'm certain she, the witness, five-and-a-half years old, doesn't know what that question means. . . .

"[Defense Counsel]: Your Honor, if the form is unacceptable at this point, and is continuously obstructing my cross-examination—

"[The Prosecutor]: She's a five-and-a-half year old girl—

"[Defense Counsel]: I would submit that [the victim] is incompetent to testify.

"The Court: Well, I'll make that decision.

"[Defense Counsel]: If that question is not understandable, then I would submit that this witness is incompetent.

"The Court: And, if I determine the contrary, then I am, what?

"[Defense Counsel]: Your Honor, if you wish me to proceed, I'll proceed.

"The Court: Of course, you must proceed, you have to defend your client, but do so within the rules. Do you have another question?"

The defendant contends that those remarks conveyed to the jury the court's opinion not only that the victim was capable of telling the truth, but that she was, in fact, telling the truth. The defendant further contends that the aggregate effect of the court's remarks was to bolster the victim's credibility improperly and to undermine the defendant's right to have all issues of credibility independently determined by the jury.

We begin by noting the well established rule that "[w]hile the competency of a witness is for the trial court to evaluate, the credibility of a witness is for the jury to determine." *State* v. *Morant*, 242 Conn. 666, 682, 701 A.2d 1 (1997). It is, therefore, fundamental that the court cannot vouch for the credibility of the state's witnesses. See *State* v. *Camerone*, 8 Conn. App. 317, 325–27, 513 A.2d 718 (1986). Furthermore, "[d]ue process requires that there should be no [statement during the trial] that appears to reject a defendant's credibility and implies judicial support of a prosecution witness' testimony. . . . The trial court should never assume a position of advocacy, real or apparent, in a case before it, and should avoid any displays of hostility or skepticism toward the defendant's case, or of approbation for the prosecution's. . . . A fine line separates proper and improper judicial conduct and the judge must strive

to appear impartial and detached." (Citations omitted; internal quotation marks omitted.) *State* v. *Pharr*, 44 Conn. App. 561, 569–70, 691 A.2d 1081 (1997). "Any claim that the trial judge crossed the line between impartiality and advocacy is subject to harmless error analysis." (Internal quotation marks omitted.) *State* v. *Lopes*, 78 Conn. App. 264, 275, 826 A.2d 1238, cert. denied, 266 Conn. 902, 832 A.2d 66 (2003).

The essential inquiry is whether the court's remarks appeared to imply judicial support of the victim's credibility, thereby intruding on the function of the jury to itself determine her credibility. We conclude that the remarks had such an effect.

This court has stated that "[j]udges in this state . . . are given wide latitude to comment fairly and reasonably upon evidence received at trial, but the court must refrain from making improper remarks which are indicative of favor or condemnation . . . . Even though a judge may take all reasonable steps necessary for the orderly progress of the trial, he must always be cautious and circumspect in his language and conduct." (Citations omitted; internal quotation marks omitted.) *State* v. *Hardwick*, 1 Conn. App. 609, 611, 475 A.2d 315, cert. denied, 193 Conn. 804, 476 A.2d 145 (1984).

Admittedly, the judge's comments were neither overtly partial toward the victim nor explicitly supportive of her testimony. The measure of any improper influence on the jury, however, must be assessed with an eye toward the authoritative position of a judge presiding over a trial and the corresponding propensity of the jury to look to the judge for guidance in its consideration of the case. Indeed, this court has recognized that "[t]he influence of the trial judge on the jury is necessarily and properly of great weight . . . and jurors are ever watchful of the words that fall from him. . . . These admonitions and cautions are prompted by

the truism that a jury has a natural tendency to look to the trial judge for guidance, and may find it even where it is not intended." (Citations omitted; internal quotation marks omitted.) *State* v. *Pharr*, supra, 44 Conn. App. 569–70.

Central to a defendant's right to a fair trial is the right to have issues of fact and credibility decided by the jury. See *State* v. *Hines*, 187 Conn. 199, 210, 445 A.2d 314 (1982). Here, the court's remarks, viewed in the aggregate, taken together with their fair implications, worked prejudicially on the defendant because they conveyed to the jury the court's own notions on matters solely within the jury's province. In so doing, the court trespassed both on the jury's function as sole arbiter of credibility and the defendant's right to a trial in which the jury's exercise of that function is not impeded.

Our cases hold that when error is of constitutional dimension, it is reversible unless the state proves the error harmless beyond a reasonable doubt. See *State* v. *Lopes*, supra, 78 Conn. App. 275. The state has not sustained its burden.

This is not a circumstance in which "the evidence against the accused is so overwhelming that we can conclude as a matter of law that the jury's verdict was not influenced [by the trial court's comments]." *State* v. *Cohane*, 193 Conn. 474, 485, 479 A.2d 763, cert. denied, 469 U.S. 990, 105 S. Ct. 397, 83 L. Ed. 2d 331 (1984). Quite to the contrary, because of the absence of any scientific, medical or corroborating eyewitness testimony linking the defendant with the criminal activity with which he was charged, the jury's acceptance of the victim's testimony was the only basis on which a guilty verdict could have been returned. By effectively vouching for the victim's credibility, the court detrimentally undermined the defendant's theory of the case, which was, quite simply, that her testimony was not

reliable. On the basis of the foregoing, we conclude that it is likely that the jury's verdict was influenced by the court's remarks. We accordingly find that the state failed to sustain its burden of proving that the court's improper remarks were harmless beyond a reasonable doubt.

Related to and reinforcing our determination that the court's remarks were not harmless was the court's refusal to allow defense counsel to engage in meaningful cross-examination of the victim, which could have elicited impeachment evidence that may have diluted the prejudicial impact of the court's remarks. Of the five remarks the defendant challenges on appeal, three of them were made by the court following attempts by defense counsel to question the victim as to her ability to tell the truth and, in particular, as to a prior inconsistent statement the victim had made that she did not know what it meant to tell the truth. In all three instances, the court precluded defense counsel from questioning the victim.

Our Supreme Court has underscored the importance of cross-examination as to a minor victim's competency, particularly when, as here, defense counsel did not otherwise have an opportunity to challenge the competency of the victim's testimony. See *State v. James*, 211 Conn. 555, 565, 560 A.2d 426 (1989). In *James*, our Supreme Court upheld the constitutionality of General Statutes § 54-86h,[6] the child victim competency rule, against a claim that it violates the right to confrontation by preventing defense counsel from challenging the competency of a child victim. Recognizing that "competency is closely related to credibility"; *State v. James*, supra, 565; the court reasoned that a child sexual assault victim is still subject to cross-examination like any other witness and that any questions

---

[6] See footnote 5.

defense counsel may have asked at a competency hearing could be asked during cross-examination. Id. Although it is not certain that the prohibited cross-examination in this case would have elicited information capable of mitigating the harm caused by the court's remarks, the court's refusal to permit that line of questioning compounded the impression created by the improper remarks.

Further reinforcing our determination that the court's remarks were not harmless was the court's jury instruction on the issue of the victim's in-court identification of the defendant as the perpetrator. The court's instruction directed the jury to accept as reliable the victim's in-court identification of the defendant as the person who had sexually assaulted her and thereby foreclosed jury consideration on the issue of identity. In so instructing the jury, the court effectively vouched for the credibility of the victim's testimony on the identity of the perpetrator and compounded the damage of its earlier remarks.

The inappropriateness of the court's instruction is made apparent by the victim's obvious difficulty identifying the defendant in court. During the state's case-in-chief, counsel and the victim entered into the following colloquy:

"[The Prosecutor]: Okay . . . turn around and look at me if you can, please. . . . [D]o you know somebody by the name of Fredo?

"[The Victim]: Yes.

"[The Prosecutor]: Okay. Do you see Fredo in the courtroom today?

"[The Victim]: No.

"[The Prosecutor]: Are you sure?

"[The Victim]: No.

"[The Prosecutor]: If you stand up and look around, would that help you?

"[The Victim]: Mm-hmm.

"[The Prosecutor]: . . . [I]f you could, could you stand up for me, please?

"[The Victim]: Okay.

"[The Prosecutor]: And, Your Honor, with the court's permission, if she could come down. (The witness stepped off the witness stand.) . . . Okay . . . I want you to look at everybody in the court—stand right here if you can. Thank you.

"[The Victim]: Right here?

"[The Prosecutor]: Right there. Stay right there. I want you to look around the courtroom and tell me if you see anybody that you recognize as Fredo?

"[The Victim]: I don't know. I don't see Fredo. . . .

"[The Prosecutor]: . . . [I]f you could just look around the entire courtroom—

"[The Victim]: I don't see Fredo.

"[The Prosecutor]: Okay. Look over here as well on the other side of the courtroom.

"[The Victim]: You mean right there?

"[The Prosecutor]: I'm not telling you anything. Do you see anybody in the courtroom that looks like the person that you know as Fredo?

"[The Victim]: Fredo? No.

"[The Prosecutor]: Are you sure?

"[The Victim]: No. . . .

"[The Prosecutor]: Again . . . could you look around the courtroom please?

"[The Victim]: Maybe the hair was gray.

"[The Prosecutor]: Maybe what?

"[The Victim]: Maybe the hair was gray.

"[The Prosecutor]: Whose hair was gray?

"[The Victim]: Maybe it was Fredo's hair was gray.

. . .

"[The Prosecutor]: Okay. Come over here if you can. Stand right here. [The victim was brought to the center of the courtroom.] Now . . . you were just saying something a moment ago about maybe the hair was gray. Whose hair were you talking about?

"[The Victim]: Maybe was that guy right there.

"[The Prosecutor]: Which guy was that?

"[The Victim]: Look, the gray hair up top.

"[The Prosecutor]: Could you go to the person in the courtroom who you're talking about.

"[The Victim]: Talking about?

"[The Prosecutor]: Who was the person with the gray hair that you're talking about right now?

"[The Victim]: Right there.

"[The Prosecutor]: If you could go over to—

"[The Victim]: Next to the desk.

"[The Prosecutor]: Could you go over to that person right now.

"[The Victim]: Is he named Fredo?

"[The Prosecutor]: I'm asking—well, I'm not saying anything to you, but can you go to the person, can you point to the person that you're speaking of. . . . Your Honor, may the record reflect she's pointing to the defendant?

"The Court: It may so indicate."

That dialogue not only demonstrates the victim's difficulty in identifying the defendant, but perhaps more troubling is that it casts serious doubt on whether her responses could accurately be characterized as an identification of the defendant as the perpetrator. The excerpt raises the question of whether the victim was pointing to the defendant to identify him as the perpetrator or simply to clarify that he was the person about whom she asked the prosecutor: "Is he named Fredo?"

Notwithstanding the uncertainty surrounding the victim's identification of the defendant, the court not only refused to charge the jury on the issue of identity, but instructed the jury not to consider the issue at all. The court instructed: "And you've heard argument and argument about whether or not the identification of the accused is an issue here. I'd like to bring some common-sensical approach to that. . . . The question is, is this the gentleman who was identified as being named Fredo, Alfredo, is he the one at the synagogue on the dates and times in question. . . . There isn't any question that he's identified to be the person there. What happened there and whether he did these things is another issue, but don't get caught up in is [this] the man. That issue is not one that the jury should spend any time on."

That instruction implicitly validated the credibility and the sufficiency of the victim's in-court identification of the defendant as the perpetrator and enhanced the prejudicial impact of the court's earlier remarks.

We also reject the argument advanced by the state that the court's curative instruction rendered the remarks harmless. The court instructed the jury: "I made a cursory examination to determine whether she was aware of where she was. I made no determination that she could be determined by me for your benefit; I didn't find that she's truthful or not. That is for you."

As a general matter, "[t]he jury is presumed, in the absence of an indication to the contrary, to have followed the instructions of the trial court." (Internal quotation marks omitted.) *State* v. *Chance*, 236 Conn. 31, 51, 671 A.2d 323 (1996). Although our appellate courts have always given great weight to curative instructions in assessing claimed errors; see *State* v. *Smith*, 200 Conn. 544, 552, 512 A.2d 884 (1986); *State* v. *Fernandez*, 198 Conn. 1, 17, 501 A.2d 1195 (1985); our courts have also recognized that "a curative instruction is not inevitably sufficient to overcome . . . the impact of prejudice." (Internal quotation marks omitted.) *State* v. *Fernandez*, supra, 17.

Although it is not possible to determine with precision what prejudice a court's remarks might have on a jury, the likelihood here of prejudice to the defendant's case is apparent. In view of the significance of the remarks to the central issue in the trial, i.e., the victim's credibility, and the absence of corroborative evidence of the defendant's guilt, the claimed curative instruction was not likely to have neutralized the court's remarks nor proscribed their prejudicial impact on the jury's assessment of the victim's credibility. As we are persuaded that the prejudicial impact of the court's remarks "has probably overborne reasonable juror conscientiousness," we cannot accept the claimed efficacy of the curative instruction. See id.

We conclude, therefore, that the court's remarks, particularly when coupled with the restriction of the defen-

dant's cross-examination of the victim, improperly bolstered the credibility of the victim's testimony in violation of the defendant's right to a fair trial and that the court's curative instruction did not render the comments harmless. Accordingly, we reverse the judgment of the trial court.

Although the defendant raised additional claims on appeal, we need not address them inasmuch as our holding with respect to the court's improper remarks is dispositive. We choose, however, to address the defendant's claim regarding the court's denial of his motion to unseal the victim's confidential records because that issue is likely to recur at retrial.

## II

The defendant claims that the court improperly denied his motion to unseal the victim's confidential records in violation of his rights to due process and to a fair trial. Specifically, the defendant asserts that records generated by the department of children and families and an educational institution attended by the victim may contain information probative of past sexual abuse in the victim's family, alternative sources of knowledge of sexual language and conduct, and the victim's testimonial capacity. The defendant claims that the court's refusal to permit access to the records violated his rights to due process and to a fair trial. We disagree.

On March 14, 2002, the defendant filed a pretrial motion requesting that the court unseal the victim's confidential records. Following an in camera inspection of the records, the court denied the defendant's motion.

"While we are mindful that the defendant's task to lay a foundation as to the likely relevance of records to which he is not privy is not an easy one, we are also mindful of the witness' legitimate interest in main-

taining, to the extent possible, the privacy of her confidential records." (Internal quotation marks omitted.) *State* v. *Walsh*, 52 Conn. App. 708, 722, 728 A.2d 15, cert. denied, 249 Conn. 911, 733 A.2d 233 (1999). On review, we must determine whether the trial court's decision constituted an abuse of discretion. Id.

This court, on appeal, has the responsibility of conducting its own in camera inspection of the sealed records to determine if the trial court abused its discretion in refusing to release those records to the defendant. See *State* v. *Tyson*, 43 Conn. App. 61, 70, 682 A.2d 536, cert. denied, 239 Conn. 933, 683 A.2d 401 (1996). We conclude that the court did not abuse its discretion.

"The linchpin of the determination of the defendant's access to the records is whether they sufficiently disclose material especially probative of the ability to comprehend, know and correctly relate the truth . . . so as to justify breach of their confidentiality . . . . Whether and to what extent access to the records should be granted to protect the defendant's right of confrontation must be determined on a case by case basis." (Citation omitted; internal quotation marks omitted.) *State* v. *Walsh*, supra, 52 Conn. App. 723. "[W]hen the trial court has reviewed the records in camera, access to the records must be left to the discretion of the trial court which is better able to assess the probative value of such evidence as it relates to the particular case before it . . . and to weigh that value against the interest in confidentiality of the records." (Internal quotation marks omitted.) Id.

We have carefully examined the challenged records and conclude that the court reasonably could have found that they contained no information that is probative of past sexual abuse in the victim's family, alternative sources of knowledge of sexual language or conduct, or the victim's testimonial capacity. Accord-

ingly, the court did not abuse its discretion in denying the defendant's motion to unseal the victim's confidential records.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.