## STATE OF CONNECTICUT *v.* DANIEL DIAZ
## (AC 23341)

Foti, Flynn and DiPentima, Js.

Argued September 17—officially released November 30, 2004

*Neal Cone,* senior assistant public defender, for the appellant (defendant).

*Christine Collyer,* special deputy assistant state's attorney, with whom, on the brief, were *Scott J. Murphy,* state's attorney, and *Mary Rose Palmese,* supervisory assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Daniel Diaz, appeals from the judgment of conviction, rendered after a jury trial, of possession of narcotics with the intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), possession of narcotics with the intent to sell within 1500 feet of a public housing project in violation of General Statutes § 21a-278a (b), possession of narcotics in violation of General Statutes § 21a-279 (a) and interfering with a police officer in violation of General Statutes § 53a-167a (a).[1] On appeal, the defendant claims that (1) there was insufficient evidence to convict him of violating §§ 21a-278 (b) and 21a-278a (b) because the state failed to establish that he intended to sell the narcotics and (2) a statement made by the court during its final charge misled the jury. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. At approximately 11:30 a.m. on April 5, 2001, Detectives Thomas Steck and Thomas Gray of the New

---

[1] The defendant was charged with crimes resulting from two separate incidents that occurred on April 5, 2001. In the first incident, which occurred at approximately 10:30 a.m., the defendant was charged with sale of narcotics in violation of § 21a-278 (b), possession of narcotics with intent to sell within 1500 feet of a public housing project in violation of § 21a-278a (b) and possession of narcotics in violation of § 21a-279 (a). The defendant was acquitted of all the charges relating to that incident.

Britain police department received information that suspects from a Newington robbery were going to Malikowski Circle in New Britain to trade what they had stolen for drugs. The defendant was not a suspect in the Newington robbery. Upon arriving at Malikowski Circle, part of a public housing project, Steck and Gray observed the defendant sitting on the curb talking to the occupant of a vehicle. On the basis of their experience, Steck and Gray believed that the defendant was engaging in a hand-to-hand drug transaction. Steck and Gray then exited their cruiser to investigate. As Steck and Gray emerged from their cruiser, the defendant stood up and turned in an attempt to use his body as a shield to hide what he was holding. The defendant then began to flee from the detectives. Steck pursued the defendant on foot while Gray went back to the cruiser in an attempt to corner the defendant. As the defendant ran, Steck observed the defendant drop a bag of heroin, which Steck picked up before continuing to chase the defendant. Later in the pursuit, Steck observed the defendant throw several bags of heroin into a cardboard box, which Steck did not immediately retrieve. The defendant subsequently was apprehended when Gray blocked the defendant's flight with the cruiser. Once Gray had the defendant subdued in handcuffs, Steck retrieved the several bags of heroin from the area where he had seen the defendant toss them. Following a jury trial, the defendant was convicted and sentenced to a total effective term of eighteen years imprisonment. This appeal followed.

I

The defendant first claims that there was insufficient evidence to convict him of violating §§ 21a-278 (b) and 21a-278a (b) because the state failed to establish that he intended to sell the heroin. We disagree.

The defendant concedes that this claim is unpreserved because he did not alert the trial court to the

specifics of the claim he now raises before this court. We will, however, review the defendant's unpreserved sufficiency claim because "such claims implicate a defendant's federal constitutional right not to be convicted upon insufficient proof." (Internal quotation marks omitted.) *State* v. *Gordon*, 84 Conn. App. 519, 534, 854 A.2d 74, cert. denied, 271 Conn. 941, 861 A.2d 516 (2004).

"In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . This does not require that each subordinate conclusion established by or inferred from the evidence, or even from other inferences, be proved beyond a reasonable doubt . . . because this court has held that a jury's factual inferences that support a guilty verdict need only be reasonable. . . .

"[A]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty. . . . Furthermore, [i]n [our]

process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Citation omitted; internal quotation marks omitted.) *State* v. *Garner*, 270 Conn. 458, 472–73, 853 A.2d 478 (2004).

"[W]here there is sufficient evidence to support a reasonable inference that the defendant intended to commit the crime charged, whether such inference should be drawn is properly a question for the jury to decide." (Internal quotation marks omitted.) *State* v. *Jeffreys*, 78 Conn. App. 659, 674, 828 A.2d 659, cert. denied, 266 Conn. 913, 833 A.2d 465 (2003). "Our review is a fact based inquiry limited to determining whether the inferences drawn by the jury are so unreasonable as to be unjustifiable." (Internal quotation marks omitted.) Id.

The defendant does not challenge the sufficiency of the evidence as it relates to his having possessed the heroin. Rather, it is the defendant's claim that there was insufficient evidence to support the jury's finding that he intended to sell the heroin that he possessed.

"Proof of intent is usually established through circumstantial evidence, from which the jury may draw reasonable and logical inferences. . . . The quantity of narcotics found in the defendant's possession [is] probative of whether the defendant intended to sell the drugs. . . . Also indicative of the defendant's intent to sell narcotics is the manner in which the narcotics are packaged. . . . Evidence demonstrating that the defendant was present in a known drug trafficking area further suggests an intent to sell. . . . In addition, the absence of drug paraphernalia indicates that the substance is not intended for personal use, but rather for

sale to others." (Internal quotation marks omitted.) Id., 675–76.

In this case, there was sufficient evidence to establish that the defendant had an intent to sell the heroin he possessed. The jury heard from Steck, who testified that he observed the defendant selling narcotics to the occupant of the vehicle. Steck testified that upon arriving at Malikowski Circle, a known drug trafficking area, he observed the defendant engage in a hand-to-hand drug transaction. Upon observing the approaching detectives, the defendant attempted to conceal what he had in his hand by shielding it with his body. As the detectives neared, the defendant fled. During the flight, the defendant discarded twenty-one individually wrapped, heat sealed bags of heroin, which were recovered by Steck. Gray testified to the same effect.

When the defendant was arrested, he was found in possession of a cellular telephone, a pager and $250 in cash. The defendant was not found in possession of any drug paraphernalia. Michael Sullivan, a captain with the New Britain police department, testified as an expert in the drug trade. Sullivan testified that drug dealers typically are found in possession of cellular telephones or pagers. Sullivan additionally testified that when an individual selling drugs is arrested, he is usually in possession of cash. Sullivan also testified that the heroin that the defendant possessed was packaged in a manner consistent for sale.

We conclude that the evidence, taken as a whole, and the reasonable inferences drawn therefrom, was sufficient for the jury reasonably to have determined that the defendant had the intent to sell the heroin.

II

The defendant next claims that a statement made by the court during its final charge misled the jury.

Although we agree with the defendant that the court's statement was improper, under the facts of this case, we conclude that the impropriety was harmless.

The following additional facts are necessary to our resolution of the defendant's claim. During its charge to the jury on possession of narcotics, the court stated: "Suffice it to say that possession in the sixth count is or has reference to the events at about 11:30 a.m. on the street and then for a brief period of time thereafter when *I believe it's plain that the defendant had possession of the narcotics but then discarded* [*them*], *whatever he had.* That's, I believe, what the state is relying on in connection with the [sixth] count charging possession of narcotics."[2] (Emphasis added.) It is the defendant's contention that this statement by the court deprived him of his right to a fair trial and infringed on his right to a trial by jury under both the federal constitution and our state constitution.[3]

The defendant did not preserve his claim and now seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[4] or the plain error doctrine.

---

[2] In its charge, the court actually stated: "That's, I believe, what the state is relying on in connection with the third count charging possession of narcotics." The defendant acknowledges that the court's reference to the third count, which related to the 10:30 a.m. incident, appears to be a misstatement because there was no evidence relating to the 10:30 a.m. incident in which the defendant discarded anything.

[3] "Because the defendant has not briefed his claim separately under the Connecticut constitution, we limit our review to the United States constitution. We have repeatedly apprised litigants that we will not entertain a state constitutional claim unless the defendant has provided an independent analysis under the particular provisions of the state constitution at issue. . . . Without a separately briefed and analyzed state constitutional claim, we deem abandoned the defendant's claim . . . ." (Internal quotation marks omitted.) *State* v. *Hurdle*, 85 Conn. App. 128, 133 n.1, 856 A.2d 493, cert. denied, 271 Conn. 942, 861 A.2d 516 (2004).

[4] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of

See Practice Book § 60-5.[5] Because the record is adequate and the defendant's claim is of constitutional magnitude, we will review the claim under *Golding.* See *State* v. *Fenn,* 16 Conn. App. 318, 329, 547 A.2d 576, cert. denied, 209 Conn. 822, 551 A.2d 757 (1988), cert. denied, 488 U.S. 1031, 109 S. Ct. 841, 102 L. Ed. 2d 973 (1989).

"In reviewing a claim that the court improperly commented on the evidence, we first note that [i]t has been established by repeated decisions in this State that a court, in submitting a case to the jury, may, at its discretion, call the attention of the jury to the evidence, or lack of evidence, bearing upon any point of evidence in issue in the case, and may comment upon the weight of the evidence, so long as it does not direct or advise the jury how to decide the matter . . . . The ultimate test of the charge is whether, read in its entirety, it fairly presents the case to the jury so that no injustice is done . . . . Individual comments are not to be judged in isolation from the charge as a whole . . . and should be examined not in a vacuum, but in the context of the factual issues raised at trial." (Internal quotation marks omitted.) *State* v. *Ortiz,* 47 Conn. App. 333, 346–47, 705 A.2d 554 (1997), cert. denied, 244 Conn. 902, 710 A.2d 175 (1998). "Any claim that the trial judge crossed the line between impartiality and advocacy is subject to harmless error analysis." (Internal quotation marks omitted.) *State* v. *Vargas,* 80 Conn. App. 454,

---

a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Emphasis in original.) *State* v. *Golding,* supra, 213 Conn. 239–40.

[5] Practice Book § 60-5 provides in relevant part: "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

461, 835 A.2d 503 (2003), cert. denied, 267 Conn. 913, 840 A.2d 1175 (2004).

The court's statement that it believed that it was "plain that the defendant had possession of the narcotics, but then discarded [them]," clearly was improper. "The trial court should never assume a position of advocacy, real or apparent, in a case before it, and should avoid any displays of hostility or skepticism toward the defendant's case, or of approbation for the prosecution's. . . . A fine line separates proper and improper judicial conduct and the judge must strive to appear impartial and detached." (Internal quotation marks omitted.) Id., 460–61. In this case, the court's comment crossed that line.

The defendant was convicted of possession of narcotics, possession of narcotics with the intent to sell by a person who is not drug-dependent and possession of narcotics with the intent to sell within 1500 feet of a public housing project. Possession is an essential element of each offense. For the defendant to have been convicted under each statute, the state was required to prove beyond a reasonable doubt that he was either in actual or constructive possession of narcotics. "Central to a defendant's right to a fair trial is the right to have issues of fact and credibility decided by the jury." Id., 462. The court's statement that it believed it was plain that the defendant was in possession of narcotics and then discarded them impermissibly removed an essential element of each offense from the jury's consideration. Accordingly, it was improper.

Although the court's comment was improper, we conclude that under the facts of this case, it was harmless. Reading the court's instructions as a whole, as we are required to do, we do not agree with the defendant's contention that the court's improper comment was harmful.

We initially note: "Where counsel . . . seeks to raise on appeal a potential defect in the jury charge which he did not raise at trial, his silence at trial is a powerful signal that, because of the posture of the case, he did not hear the defect in the harmful manner which he presses on appeal, or even if he did so hear it, he did not deem it harmful enough to press in the trial court. When the principal participant in the trial whose function it is to protect the rights of his client does not deem an issue harmful enough to press in the trial court, the appellate claim that the same issue clearly deprived the defendant of a fundamental constitutional right and a fair trial . . . is seriously undercut." (Internal quotation marks omitted.) *State* v. *Ciccio*, 77 Conn. App. 368, 380, 823 A.2d 1233, cert. denied, 265 Conn. 905, 831 A.2d 251 (2003).

In this case, the court repeatedly instructed the jury that it was the sole finder of fact and that it was the jury's recollection of the facts that controlled, not that of the court or the attorneys.[6] "We repeatedly have

---

[6] In its charge to the jury, the court stated: "I'm sure that you understand by now that under our system of judicial procedure in a case tried to the jury, *it is the jury's province and sole responsibility to pass upon the disputed facts and to ascertain where the truth lies.* It's the responsibility of the judge as the presiding officer at the trial first to rule upon the admission of evidence during the progress of the trial and at the conclusion of the trial to give you people, the jury, the principles of law which apply to the case. *I do repeat by emphasis, however, that you people are the sole judges of the facts.* Later in this charge, I may refer briefly to some of the evidence that was brought out during the trial of the case, but whether I do or not, it's for you—*it's your recollection of the evidence and not mine or the attorneys which is controlling upon you. No matter what I may say concerning the facts or what the lawyers have said to you, it's your recollection of the facts which is to guide you in deciding this case.*

"Now, it's my right to make comments to you as to the weight of the evidence or as to the propriety or lack of propriety of your finding certain facts from the evidence. *But whether I undertake to do so or not, my comments are merely suggested to you for you to approve or disapprove in the exercise of your own sound judgment.* My chief concern with the facts in the case is to refer to them insofar as it's necessary to make clear to the application of the rules of law which are relevant in this case. *Also, if I refer to certain evidence or certain facts in the case and not to others,*

stated that [t]he jury [is] presumed to follow the court's directions in the absence of a clear indication to the contrary." (Internal quotation marks omitted.) *State* v. *Ancona*, 270 Conn. 568, 616, 854 A.2d 718 (2004). Additionally, the court properly instructed the jury on the elements required to establish possession of narcotics and instructed the jury that it had to find that the state had proved each element beyond a reasonable doubt.[7]

*don't think that I mean thereby particularly to emphasize those facts, those that I speak of or to limit your consideration just to them. Should I overlook anything in the evidence, you supply it from your recollection, and if I incorrectly state any evidence, you will correct my error. That's because it's your function and your duty to weigh the evidence offered, to make the proper deductions or inferences from it, and to determine the facts and what the lawyers say to you and what I say to you regarding those facts, except as I've already pointed out, should have weight with you only insofar as you approve of it in your own minds.*

"However, it is essential that you accept and act upon the principles of law which I give to you as controlling upon you, just as the court will accept your finding of the facts as controlling upon it. *So, to repeat, it's not part of my duty in any way to decide questions of fact. That's exclusively within your province and from all of the evidence produced in this courtroom; you are to decide just what the true facts are. So, you, the jury, are responsible for the determination of facts and you apply to those facts the law as given to you by the court, and that combination of the facts as you find them and the law as I explain it to you will determine the verdict that you will render in this case pertaining to the guilt or innocence of [the defendant].*" (Emphasis added.)

[7] In its charge to the jury on the third count of the information, possession of narcotics relating to the 10:30 a.m. incident, the court stated in relevant part: "And the statute says that any person who possesses or has under his control any quantity of a narcotic substance is—except as authorized—shall be punished. So, for you to find the defendant guilty of this charge, the state must prove beyond a reasonable doubt that the defendant knowingly possessed or had under his control a narcotic substance. Now, possession may be actual or constructive. Possession, actual or constructive, may be proven either by direct or circumstantial evidence. . . .

"You should keep in mind that regardless of the—whether the direct evidence, circumstantial evidence or a combination or the two is relied upon for conviction, all of the elements of the crime must be proven beyond a reasonable doubt before you can find the defendant guilty. Keep in mind, now, that possession of narcotics, not ownership, is all that is required. Actual possession is established when it is shown that the defendant had actual physical possession of the narcotics. Constructive possession is established when it is shown that the defendant exercises a certain dominion and control over the narcotics and had actual knowledge of their presence.

See *State* v. *Flowers*, 69 Conn. App. 57, 77–78, 797 A.2d 1122, cert. denied, 260 Conn. 929, 798 A.2d 972 (2002).

In support of his claim that the court's comment was harmful, the defendant relies primarily on *State* v. *Echols*, 170 Conn. 11, 364 A.2d 225 (1975), and *State* v. *Vargas*, supra, 80 Conn. App. 454. The defendant also relies on a series of cases from other jurisdictions in which the judgment of the trial court was reversed, even though the court provided the jury with a limiting instruction that it was the sole finder of facts.[8] The

Remember, then, constructive possession requires a showing of two things, control and knowledge. Constructive possession may be exclusive or it may be shared by others. The latter is known as joint possession. . . .

"Now, control is to be given its ordinary meaning. That is to say, the defendant is in control of the narcotics when it is shown that he exercises a direct control over those narcotics. Now, coupled with possession in the first element is the requirement of knowledge. I've defined that for you already, but I'll repeat: The state must prove beyond a reasonable doubt that the defendant knowingly possessed narcotics. A person acts knowingly with respect to possessing narcotics when he is aware that he is in possession of the narcotics. So, if you find that the state has proven beyond a reasonable doubt all of the elements—each of the elements of the crime of possession of narcotics, then you find the defendant guilty. On the other hand, if you find that the state has failed to prove beyond a reasonable doubt any one of the elements, you then find the defendant not guilty."

In its charge to the jury on the sixth count of the information, possession of narcotics relating to the 11:30 a.m. incident, the court referenced its prior instructions on what the state had to prove in order for the jury to find the defendant guilty of possession of narcotics. The court stated in relevant part: "The defendant is also charged with possession of narcotics in the sixth count, as he was, you'll recall, in the third count. . . . So, that I'm not going to redefine possession of narcotics for you. I've explained the elements of that, what it is the state must prove beyond a reasonable doubt."

[8] In *McBride* v. *United States*, 314 F.2d 75 (10th Cir. 1963), the United States Court of Appeals for the Tenth Circuit found that the defendant was entitled to a new trial after the trial court stated to the jury in relevant part: "Now at this point I should like to say, as the . . . thirteenth member of the jury, that this is a rather simple case. The facts are clear in my mind that this little corporation was organized but for one purpose, and that is to use the mails and to defraud people, little people, out of money. I believe from the evidence that [the owner of the corporation] had no intention at any time to be in good faith in his work, in the organization of the company, the use of the mails, sending salesmen out to go out and prey upon people who were in desperate need of some financial help. Now we get down to

defendant's reliance on those cases, however, is misplaced.

In *State* v. *Echols*, supra, 170 Conn. 11, our Supreme Court reversed the judgment of the trial court as a result of the trial court's interjection, during the cross-

---

later; this accused was employed or engaged. I can't help but believe that he knew of all the lack of good faith in the business that he joined up with. I can't help but believe that he went about Texas and Louisiana and Mississippi, he knew that he was doing wrong. He is bound to have known it.

"Now I don't know. He says that he did it in good faith and that he was employed and that he worked as an employee, that he reported these things in order that somebody might, the company might make these loans. I can't help but believe that the accused here knew well when he started out that he was going to make a commission and whether or not he ever saw these poor people again or not it made little or no difference to him. My views are that it's pretty serious business when we permit the people to use our mails and take advantage of our people.

"Now what I have said to you is simply my views and you must disregard it. I have nothing to say except that I can make remarks as I have; but you must disregard what I have said about this case. You are the sole jurors in this case. You must pass upon this evidence yourself, so I am asking you to disregard what I have said to you with reference to my views. Disregard it completely. Do not consider that I have ever said anything to you." Id., 76.

The trial court's single instruction to disregard its views of the case after stating in great length that it thought the defendant was guilty and after expressing its opinion as to the seriousness of the charges against the defendant is vastly different than the case before us. In the present case, the court made a single comment after repeatedly instructing the jury that it was the sole finder of fact and that its recollection of the facts was controlling.

In *United States* v. *Singleton*, 532 F.2d 199, 200 (2d Cir. 1976), the defendants were convicted of unlawful possession of stolen mail. On appeal, the defendants claimed that the District Court's failure to instruct the jury that it had to find that the checks had in fact been stolen, combined with the court's statement that the prosecution successfully proved that the checks were stolen, deprived them of their right to a fair trial. Id., 204–205. In reversing the defendants' convictions, the United States Court of Appeals for the Second Circuit held that the District Court's statement, "in combination with the lack of a separate and distinct charge that the jury must find that the checks were stolen, more than probably indicated to the jury that the stolen status of the checks was an established fact." Id., 206.

In this case, the court specifically instructed the jury that in order to convict the defendant of possession of narcotics, it had to find that he in fact had either actual or constructive possession of the heroin. See footnote 7.

examination of a witness, which "could have suggested to the jury that the judge believed that the sale of narcotics occurred" when the defendant was present at the sale. Id., 15. Our Supreme Court noted that the "probability of harm [was] evident." Id.

In *State* v. *Vargas,* supra, 80 Conn. App. 454, we reversed the judgment of the trial court because of the court's comment on the credibility of the victim, holding that the state had failed to prove that the error was harmless beyond a reasonable doubt. Id., 462–63. We stated that "because of the absence of any scientific, medical or corroborating eyewitness testimony linking the defendant with the criminal activity with which he was charged, the jury's acceptance of the victim's testimony was the *only* basis on which a guilty verdict could have been returned." (Emphasis added.) Id., 462.

In this case, however, there was substantial evidence presented to support the jury's finding that the defendant was in possession of the heroin. As stated, the jury heard from Steck and Gray, who both testified that they observed the defendant engage in a hand-to-hand drug transaction. Both detectives further testified that upon observing the hand-to-hand drug transaction, they exited their cruiser to investigate. As the detectives approached, the defendant initially positioned himself to conceal what he was holding in his hand. The defendant then fled. As the defendant ran, Steck observed the defendant drop twenty-one glassine bags of heroin, which were recovered. The jury also heard testimony that when the defendant was arrested, he was in possession of a cellular telephone, a pager and $250 in cash, which, according to Sullivan, who was qualified as an expert in the drug trade, are all usually found in the possession of an individual who sells narcotics.

Although we recognize that there will be times when a court's instructions that the jury is the sole finder of

fact and that the jury is to disregard any statements that the court made contrary to the jury's factual findings will not alleviate the harmfulness of an improper comment from the court, that is not the case before us. The court repeatedly instructed the jury that it was solely within its province to decide the facts. Furthermore, no objection was made to the court's single statement. Finally, there was a substantial amount of evidence before the jury from which it could have found that the defendant was in possession of the heroin. Accordingly, reading the court's charge in its entirety, combined with the substantial evidence presented to the jury supporting a finding that the defendant was in possession of narcotics, we conclude that the court's improper comment was harmless.[9]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[9] We decline to review the defendant's claim under the plain error doctrine. See Practice Book § 60-5. "It is . . . well established that plain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . A defendant cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice." (Internal quotation marks omitted.) State v. Beverly, 72 Conn. App. 91, 103, 805 A.2d 95, cert. denied, 262 Conn. 910, 810 A.2d 275 (2002). Having concluded that the court's improper comment was harmless, we conclude that plain error review is not warranted in this case.